UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARCOS ANTONIO-CRUZ ACOSTA       :
                                 :
                                 :
                                 :          **OPINION**
             Petitioner,         :          05 Civ. 9019 (LBS)
                                 :
       v.                        :
                                 :
IMMIGRATION AND                  :
NATURALIZATION SERVICE,          :
                                 :
             Respondent.         :
------------------------------------------------------------x

Appearances

*Petitioner*
Marcos Antonio-Cruz Acosta
Pro se

*Respondent*
Frank James Loprest, Jr
U.S. Attorney's Office
Southern District of New York
86 Chambers Street
4th Floor
New York, NY 10007

═══════════════════════════════Section Break (Next Page)═══════════════════════════════

SAND, J.

Before the Court is a motion by respondent Immigration and Naturalization Service ("INS")[1] to dismiss for lack of subject matter jurisdiction due to the alleged untimeliness of the petition and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, or in the alternative, for summary judgment pursuant to Rule 56(c).  Petitioner requests a de novo hearing of his unsuccessful application for citizenship under §§ 310 and 312 of the Immigration and Nationality Act of 1952 ("INA"), as amended by 8 U.S.C. §§ 1421 and 1423.  For the reasons set forth below the motion for summary judgment is granted.

FACTUAL BACKGROUND

Petitioner received a Notice of Action concerning his application for citizenship on October 13, 2000.  (See Pet. ¶ 1; Pet. ex. A.)  Petitioner claims that his citizenship request was stayed pending the resolution of a charge of possession of marijuana.  (Pet. ¶ 4.)  On January 27, 2003, petitioner's naturalization application was denied based on a failure to produce documentation of a disposition for the possession of marijuana charge and also because petitioner failed to disclose to immigration officials that he thrice had been arrested for possession of cocaine in New York City under an assumed name.[2]  (See Decl. of F. James Loprest, Jr., August 31, 2006, at 33) (hereinafter "Loprest Decl.")

---

[1] The INS ceased to exist as an independent agency on March 1, 2003, with its functions respecting enforcement of orders of removal and deportation assumed by United States Immigration and Customs Enforcement ("ICE") in the United States Department of Homeland Security.  See Homeland Security Act of 2002, Pub. L. 107-296, §§ 451(b) & 471(a), 116 Stat. 2135, 2185, 2205 (Nov. 25, 2002).

[2] Petitioner twice pled guilty and was convicted of criminal possession of cocaine in the fourth degree under the alias "Fransisco Rodriguez".  (Loprest Decl.at 16, 24.)  Petitioner later admitted to the Board of Immigration Appeals that he was in fact Francisco Rodriguez during his unsuccessful appeal of his removal order.  (Id. at 10 (oral Decision of Immigration Judge ordering petitioner's removal).)

Petitioner was notified at this point that he could have this decision reviewed de novo by a federal district court pursuant to § 310(c) of the INA.[3] (Id. at 34.) Petitioner did not seek review until October 24, 2005. (See Pet.)

On December 9, 2004, the ICE served petitioner with papers notifying him of impending administrative removal proceedings due to the fact that, as an alien convicted of a controlled substance offense, he was now eligible for removal pursuant to INA § 237(a)(2)(B)(I). (See Loprest Decl. at 11-13.) Additionally, petitioner's possession of cocaine convictions qualified him for removal based on their designation of "aggravated felonies" INA § 237(a)(2)(A)(iii). (Id. at 14.) An Immigration judge ordered petitioner's removal to his native Dominican Republic on February 25, 2005. (Id. at 10.) Petitioner's subsequent appeals on the *removal* action were unsuccessful. (Id.) On October 24, 2005, petitioner filed this request for a de novo hearing of his initial request for citizenship, filed on January 27, 2003. (See Pet.) This is petitioner's first request for any review of his initial denial of citizenship, as opposed to his earlier requests which related to the removal order. On August 23, 2006, petitioner was removed to the Dominican Republic. (See letter from F. James Loprest, September 20, 2006).

STANDARD FOR MOTION TO DIMSISS

A court reviewing a petition under Fed. R. Civ. P. 12(b)(6) will consider all material factual allegations as true and draw all reasonable inferences in favor of the

---

[3] The statute states:
> A person whose application for naturalization under this title is denied, after a hearing before an immigration officer under section 336(a), may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5, United States Code. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

INA § 310(c).

2

plaintiff. Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999). The complaint will be dismissed "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Thomas v. City of New York, 143 F.3d 31, 36-37 (2d Cir. 1998). The court is not limited to the four corners of the complaint; it may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, … matters of which judicial notice may be taken, or … documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993). This includes "documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference." Martinez v. Williams, 186 F. Supp. 2d 353, 355 (S.D.N.Y. 2002) (internal citations omitted). In addition, the court reads a pro se plaintiff's opposition papers liberally, construing them to raise their strongest arguments. Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

DISCUSSION OF MOTION TO DISMISS

The government asserts that the Court lacks both the subject matter jurisdiction to hear this petition and that there is no claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), respectively.

The government correctly alleges that petitioner filed his request for de novo review under INA § 310(c), 8 U.S.C. § 1421, after a deadline imposed by INS regulations set forth in 8 C.F.R. § 336.9(b), which state in relevant part that "an applicant shall file a petition for review in the United States District Court having jurisdiction over his or her place of residence ... within a period of not more than 120 days after the [Immigration

3

and Naturalization] Service's determination."[4]  The government is correct that petitioner filed his application on October 24, 2005, more than two and one half years after his initial application was denied on January 27, 2003.

The government further asserts that due to petitioner filing his petition more than 120 days after the INS's determination, the Court must dismiss the petition as untimely. However, contrary to the government's assertions, the cases in this area do not support a per se denial of what would otherwise be this Court's subject matter jurisdiction simply due to a late filing of the petition for de novo review.[5]  (See Gov't's Mem. of Law in Support of Its Mot. to Dismiss the Pet., Or, In the Alternative, for Summ. J., at 11-12) (hereinafter "Resp.'s Mem.".)  In an area without much precedent, the leading circuit court decision reversed a district court decision dismissing a case for not complying with the 120 day deadline, and instead applied the default six year statutory limitation period provided by the Administrative Procedures Act.  Nagahi v. INS., 219 F.3d 1166, 1171 (10th Cir. 2000).

In Nagahi, the petitioner was made aware of the 120 day deadline in which he could file a petition for de novo review, but chose instead to seek internal review with the INS rather than appeal the case to the district court.  Id. at 1168.  When those appeals proved futile, petitioner filed for de novo review nearly six months after his application's initial denial.  Id.  The district court dismissed the petition as untimely.  Id.  In reversing the district court, the Tenth Circuit held that an administrative agency cannot create a

---

[4] Though not resting its decision on this portion of the motion to dismiss on notice grounds, the Court notes that the documents given to petitioner make no mention of the 120 day deadline, as the only statute cited in the decision he received denying his application is INA § 310(c), which does not address the INS's 120 day deadline.  See n. 3, supra.  The record does not make clear whether petitioner was otherwise informed of this deadline.

[5] Petitioner was a resident of New York City when he commenced his naturalization application, therefore the Southern District of New York was the district of his residence and the proper venue for filing for de novo review under INA § 310(c).  (See Pet.)

4

"limitations period affecting the ability of an Article III court to review agency action, absent an express delegation of congressional authority." Id. at 1167. The Tenth Circuit noted that INA § 310(c) itself contains no timelines for the de novo review. Id. at 1169; see supra note 4. After reviewing the Code of Federal Regulations, the Tenth Circuit determined that 8 C.F.R. § 336.9(b) is "the only administrative regulation which attempts to limit the time for judicial review, absent an express statutory provision." Id. at 1170. The Tenth Circuit held that the INS cannot impose its own deadline for seeking judicial review under INA § 310(c) because doing so extends beyond the authority delegated to it by Congress in this area, and therefore declined to dismiss the petition as untimely. Id. at 1171.

There is no Second Circuit precedent in this area. However the Eastern District of New York recently dealt with this issue in Montero v. Dep't of Homeland Sec., 2006 U.S. Dist. LEXIS 21092 (E.D.N.Y. 2006). In Montero, the petitioner filed her appeal nearly a year after the initial denial of her application. Id. at *2. In the decision rejecting her application, petitioner was made aware of the 120 day deadline by DHS, which read INA § 310(c) and 8 C.F.R. § 336.9(b) in conjunction with each other in rendering its decision in her naturalization hearing. Id. However, as both this Court and the Nagahi court have noted, INA § 310(c) contains no deadline in its own text. Examining the issue of timeliness of the petition, the court in Montero, after favorably reviewing the Nagahi case, determined that because there was no precedent in the Second Circuit on whether the INS had the authority to establish its own deadline, it would decline to dismiss the case on those grounds. Id. at *4.

5

Similarly, this Court chooses not to decide this petition on the unsettled ground of timeliness, particularly in light of the fact that the petition is resolvable on other grounds, and because it finds persuasive the well reasoned opinion proffered by the Tenth Circuit in Nagahi.

Turning to the issue of the motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P 12(b)(6) the Court declines to dismiss on the grounds that the case has been rendered moot by the subsequent removal of petitioner. The government argues that a district court is precluded from hearing a de novo application for naturalization while removal proceedings are *pending*. (See Resp.'s Mem. at 12-15.) However, the facts of the petition have changed since the government filed its briefs: petitioner has since been removed. Thus petitioner is no longer the subject of a removal proceeding; rather his removal is now complete.

SUMMARY JUDGMENT STANDARD

A court may grant summary judgment only where the moving papers and affidavits submitted by the parties show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Brown v. City of Oneonta, 106 F.3d 1125, 1130 (2d Cir. 1997). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. Celotex Corp., 477 U.S. at 330. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In other words a court considering a motion for summary judgment "is not to weigh the

evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996).  Additionally, a court will broadly construe the petition of a pro se party.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

GRANTING OF MOTION FOR SUMMARY JUDGMENT

As a preliminary matter the Court notes that although petitioner has been removed the petition for de novo review of his application for naturalization is not moot, contrary to the government's motion to dismiss.  In order for there to be a live case or controversy, petitioner "must have suffered, or be threatened with, an actual injury traceable to the [respondent] and likely to be redressed by a favorable judicial decision." Spencer v. Kemna, 523 U.S. 1, 7 (1998).  Here, petitioner is faced with a lifetime ban on reentry into the United States that "has a sufficient likelihood of being redressed by the relief petitioner seeks from this Court." Swaby v. Ashcroft, 357 F.3d 156, 160 (2d Cir. 2004) (finding a lifetime bar from reentry into the United States a sufficient "collateral consequence" of removal to maintain live case or controversy status.).

From the papers, it is clear that there is no genuine issue as to any material fact in this petition.  An applicant for naturalization must establish his or her eligibility for citizenship.  See 8 C.F.R. § 103.2(b)(1).  Applicants must also establish that they are of "good moral character."  8 C.F.R. § 316.10.  The Second Circuit has held that it is an "undisputed principle that the burden to prove his good moral character rest[s] on [the] petitioner, with any doubts to be resolved against him." Tieri v. INS, 457 F.2d 391, 393

7

(2d Cir. 1972); see also Cuzco v. Dep't. of Homeland Sec., 2006 U.S. Dist. LEXIS 52317 (S.D.N.Y. 2006).

A finding of good moral character is precluded by certain factors, including whether the alien has "at any time been convicted of an aggravated felony." 8 U.S.C. § 1101(f)(8); see also 8 C.F.R. § 316.10(b)(1)(ii) ("An applicant shall be found to lack good moral character, if the applicant has been . . . . [c]onvicted of an aggravated felony."). The INA defines "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 102 of the Controlled Substances Act [21 U.S.C. § 802]), including a drug trafficking crime" as defined by 18 U.S.C. 924(c)(2). See 8 U.S.C. § 1101(a)(43). A "drug trafficking offense is an 'aggravated felony' when it is: (1) an offense punishable under the [Controlled Sentences Act], and (2) can be classified as a felony under either state or federal law." United States v. Simpson, 319, F.3d 81, 85 (2d Cir. 2002).

Possession of cocaine is an offense punishable under the Controlled Substances Act. See 21 U.S.C. 841(b)(1)(a)(iii). Here, petitioner admitted that he twice plead guilty to the state felony crime of possession of cocaine in the fourth degree. (See Loprest Decl. at 10 (oral opinion of Immigration Judge), 16 (sentence), 24 (sentence).) Thus petitioner has been convicted of an aggravated felony. Because petitioner is an aggravated felon, he is statutorily precluded from making the requisite showing of good moral character one needs to qualify for naturalization, and therefore the government's motion for summary judgment is granted, as there is no genuine issue as to any material fact.

9

Case 1:05-cv-09019-LBS   Document 12   Filed 10/05/06   Page 10 of 11

## CONCLUSION

Based on the above reasoning the Court grants summary judgment for the government

SO ORDERED.

Dated:   New York, New York

October 5, 2006

_____

U.S.D.J.

.